IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRESHAUN JAKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 16-cv-00477-JPG |
| | ) |
| MICHAEL HOF, | ) |
| UNKNOWN PARTY, | ) |
| KENT BROOKMAN, | ) |
| MICHAEL KEYS, | ) |
| LORI OAKLEY, and | ) |
| KIMBERLY BUTLER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Treshaun Jake is currently incarcerated at Pontiac Correctional Center. Proceeding *pro se*, Jake has filed a complaint under 42 U.S.C. § 1983, alleging prison officials violated due process by falsely convicting him for violating several prison regulations. He seeks monetary, declaratory, and injunctive relief. (Doc. 1 at 13-15.)

This matter is now before the Court for a preliminary review of Jake's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief." For the reasons contained in this Order, Jones's claim does not survive preliminary review.

**Background**

On March 2, 2015, Jake was placed in segregation with several other inmates upon the conclusion of an altercation of which Jake was not a part. (Doc. 1 at 8.) He was released on March 4. (*Id.*) The next day, however, he was placed back in a disciplinary segregation cell. (*Id.*) On March 28, Defendants Hof, John Doe 1, and John Doe 2 gave Jake a disciplinary report charging him with "dangerous disturbance," "impeding an investigation," and "fighting." (*Id.* at 9.)

On April 1, 2015, Jake appeared before the Adjustment Committee (Defendants Brookman and Keys). (*Id.*) Jake argued that his disciplinary report was presented to him beyond the deadline prescribed by the Illinois Administrative Code, that he was innocent of the charges leveled against him, and that he was charged simply because he did not provide investigators with satisfactory answers to their questions. (*Id.* at 10.) The Committee found him guilty of all three charges and recommended that he receive one-year C grade, one year in segregation, revocation of one year of good conduct credit, and one-year commissary restriction. (*Id.*) On April 2, Defendant Warden Butler agreed with the judgment and disciplinary recommendation of the Committee, and imposed judgment accordingly. (*Id.*)

Jake filed a grievance with Defendant Grievance Officer Lori Oakley on April 28. (*Id.* at 11.) On June 29, 2015, Oakley denied his grievance. (*Id.*) Butler concurred. (*Id.*)

While in segregation, Jake ate all of his meals in his cell. (*Id.*) Once a week, he was handcuffed and taken to a small caged yard and to the shower. (*Id.*) He was not allowed to use the telephone or purchase food. (*Id.*)

In July 2015, Jake appealed his conviction to the Administrative Review Board. (*Id.* at 12.) Defendant Board member Sarah Johnson ordered that the disciplinary report be expunged, but did so 5 ½ months later, causing Jake to serve 10 months total in segregation. (*Id.* at 13.)

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Jake's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Defendants denied Jake due process when he was given a tardy disciplinary ticket containing false charges by Hof, John Doe 1, and John Doe 2, found guilty of and punished for those charges by Brookman, Keys, and Butler, his grievances were dismissed by Oakley and Butler, and his ticket was expunged by Johnson 5 ½ months after he appealed his conviction.

**COUNT 2:** Oakley and Butler violated Jake's due process rights when they dismissed his grievance.

**COUNT 3:** Jake's Fifth Amendment rights were violated.

Jake contends that the tardy presentation of the disciplinary ticket by Hof, John Doe 1, and John Doe 2, his conviction and punishment based on false charges, and the delay in expunging the false disciplinary report violated the Fourteenth Amendment's Due Process Clause (**Count 1**). Standing alone, the receipt of a false disciplinary ticket generally does not give rise to a due process violation. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856

(C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995) (citations omitted). "In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by some evidence in the record." *Piggle v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003).

While the defendants gave Jake the disciplinary ticket 26 days after the date of the incident for which he was falsely charged, the timeline Jake presented to the Court indicates that he nonetheless received advanced written notice of the charges before his Adjustment Committee hearing, and he does not allege, for example, that the delay in receiving the ticket was so egregious that it interfered with his ability and right to prepare his defense. *See United States ex rel. Houston v. Warden, Stateville Corr. Ctr.*, 635 F.2d 656, 659 (7th Cir. 1980) (finding no due process violation for two-month delay in providing ticket). Further, while the Illinois Administrative Code does compel prison officials to serve a ticket to an offender no more than eight days after the commission of the underlying offense, *see* ILL. ADMIN. CODE tit. 20 § 504.30(f), the violation of a prison rule, by itself, does not give rise to a constitutional claim, *see Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (§ 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations).

Jake has also not adequately pleaded that his disciplinary hearing violated due process. Nowhere does he allege that he was denied the "opportunity to present testimony and documentary evidence to an impartial decision-maker" or "a written explanation for the discipline that is supported by some evidence in the record." *Piggle*, 344 F.3d at 677. Quite

simply, he has not alleged that he received less process than is constitutionally required at his hearing.

Even if the aforementioned did deny Jake due process, however, he would still not have a Fourteenth Amendment claim, because an "inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest arises only when the plaintiff's confinement in segregation "impose[s] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). When making this determination, courts consider "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original).

A liberty interest does not arise unless the length of confinement in segregation is substantial and the record reveals that the conditions of confinement are unusually harsh. *Marion*, 559 F.3d at 697-98, n. 2. Ten months in segregation is not necessarily insubstantial in this case; however, his stated conditions of confinement do not rise to the level of a constitutional violation. He admits that he was given three meals a day, although he was forced to eat them in his segregation cell. He also states that he received some form of exercise once a week, and that he showered once a week. Although he was handcuffed when he left his cell for the aforementioned activities, this fact does not typify unusual harshness. And his lamentation that he was not allowed phone calls or the ability to purchase food does not bespeak a deprivation of a constitutional dimension. While Jake obviously did not face an easy time in

segregation, he has failed to show that he endured an atypical hardship.[1] Accordingly, **Count 1** is dismissed without prejudice.

Jake further alleges that Oakley and Butler violated his due process rights when they denied his grievance (**Count 2**). "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and a cause of action does not arise where a plaintiff files a grievance and simply disagrees with the outcome. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired). Further, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli*, 81 F.3d at 1430. Because Jake has not pleaded that Oakley and Butler were personally involved in the underlying due process violations alleged in this complaint, **Count 2** is dismissed without prejudice.

Finally, Jake claims that the defendants violated his Fifth Amendment right to avoid self-incrimination when he was given a false disciplinary ticket and convicted of the charges leveled against him simply because he did not provide his initial interrogators information about the altercation on the prison yard (**Count 3**). The Court is uncertain, based on the pleadings, whether Jake's Fifth Amendment rights were violated. Further, it is not clear whether or not Jake is

---

[1] For this same reason, Jake's claim against Johnson must be dismissed without prejudice. The Court notes, however, that Sarah Johnson is not listed on the docket as a defendant, even though she is listed as such on Jake's complaint. Because the Court is granting Jake leave to file an amended complaint, the Clerk is **DIRECTED** to **ADD** Sarah Johnson as a defendant in this case.

actually making a retaliation claim under the First Amendment. Therefore, **Count 3** is dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's complaint (Doc. 1) is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with this case, Plaintiff shall file his First Amended Complaint on or before **June 28, 2016**. He should label the form First Amended Complaint, and he should use the case number for this action. For **Count 1**, Plaintiff should include any allegations that infer that any defendants deprived him of his federal due process rights in connection with the investigation, disciplinary hearing, and segregation. For **Count 2**, Plaintiff should include any allegations that infer that the defendants were denied his grievances were personally involved in the denial of his due process rights such that they are amenable to suit. For **Count 3**, Plaintiff must clarify the cause of action he is bringing (Fifth Amendment or First Amendment retaliation). If a retaliation claim, he must specifically name the defendants who retaliated against him and the act or acts that constituted the retaliatory conduct.

An amended complaint supersedes all previous complaints, rendering previous complaints void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint; thus, the First Amended Complaint must stand on its own. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the amended complaint. Failure to file a First Amended Complaint shall result in the dismissal of this action with prejudice. Such

dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g). No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint. In order to assist Plaintiff in preparing his amended complaint, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 23, 2016**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**